40878. LONG et al. v. ATLANTA & WEST POINT RAILROAD COMPANY et al.

(320 SE2d 530)

HILL, Chief Justice.

The first issue in this case is not unlike that raised in an 1899 case involving this same railroad. There it was asked: "Were the provisions of the general railroad law lawfully added to the charter of the West Point company?" *Alexander v. Atlanta & West Point R. Co.,* 108 Ga. 151, 156 (33 SE 866) (1899). Today, although the facts differ, the question is substantially the same. The trial court here said they were; the minority shareholders appeal.

The Atlanta & West Point Railroad Co. (A & WP) was chartered as the Atlanta & LaGrange Railroad Company by the General Assembly in 1847, Ga. L. 1847, p. 178, and was given its present name in 1857. Ga. L. 1857, p. 66. The Seaboard System Railroad, Inc., now owns 65% of its stock. Seaboard owns all of the stock of Blue Berry Corporation, a general business (nonrailroad) corporation. In August 1983, the A & WP notified its stockholders that a meeting would be held on September 27, 1983, to consider a proposed merger of A & WP with the Blue Berry Corporation, whereby A & WP's minority shareholders would be paid $210 per share for their stock.[1] Minority shareholders then brought this suit to enjoin the September 27, 1983, meeting and the proposed merger. The trial court denied the minority shareholders' application for interlocutory injunction and this appeal followed.

Prior to 1881, railroad corporations were chartered by separate legislative acts creating each railroad and specifying its route(s). In 1881, the General Assembly enacted a general law providing for the incorporation of railroads by the Governor and Secretary of State. Ga.

---

[1] The minority shareholders contend that the real value of the stock is much more, alleging figures as high as over $500; Seaboard argues that $210 is more than 3 times the current trading value of this stock.

L. 1880-81, p. 156 (now OCGA § 46-8-40 et seq.). Having been created by an act in 1847, the A & WP lacked the power to amend its charter without the approval of the legislature. However, Ga. L. 1892, pp. 37, 50, and Ga. L. 1893, p. 89, authorized railroad corporations created by legislative act to amend their charters by application to the Secretary of State.[2] In *Alexander v. A & WP*, supra, 108 Ga. at 156-157, the court held that fundamental, radical or vital charter amendments could only be adopted by unanimous consent of the railroad's stockholders and that absent such unanimous consent the A & WP could not amend its charter by application to the Secretary of State.

Two primary issues are presented by this appeal: (a) the meaning of the unanimous consent requirement, and (b) the validity of the proposed merger. The two issues are separate and distinct from each other.

1. The minority shareholders first argue that a 1970 charter amendment authorizing A & WP to amend its charter by a vote of the majority of its stockholders is invalid. At the stockholders' meeting in 1970, two matters were presented: (1) to amend the charter to renew it for a thirty-year period and to adopt "the provisions of the general corporate laws which require the approval of a majority of the corporate stock to authorize corporate action on which stockholders are permitted to vote";[3] and (2) to authorize the sale of the railroad's interest in a depot known as the Atlanta Joint Terminal for $1,415,000. Both parties here agree that pursuant to *Alexander v. A & WP*, supra, unanimous consent was required to effect these changes. The question is whether "unanimous consent" requires approval of all of the shareholders, or of all of the shareholders present, in person or by proxy, at a duly called meeting. At the 1970 meeting, 21,205 of the 24,636 shares were so voted and there were no dissents.[4] Is this "unanimous consent?" We find that it is.

While we recognize that changing from unanimous consent to

---

[2] Ga. L. 1892, pp. 37, 50, supra, now appears as part of our railroad laws, OCGA § 46-8-54. Ga. L. 1893, p. 89, supra, became part of the Corporation Code in 1895 (§ 1840) and now appears as part of OCGA § 14-4-100, quoted in footnote 3, below.

[3] The accuracy of the statement quoted is not in issue here. The general corporate law, enacted in 1968, Ga. L. 1968, pp. 565, 804, amended in 1969, Ga. L. 1969, pp. 152, 204, now OCGA § 14-4-100, provides: "Any insurance, railroad, canal, navigation, express, or telegraph company, incorporated prior to April 1, 1969, by special Act of the General Assembly, may amend its charter so as to acquire any or all of the corporate powers and privileges granted to a like corporation under the Acts passed prior to April 1, 1969, or thereafter, providing for the grant of corporate powers and privileges to such companies by the Secretary of State, by filing with the Secretary of State an application . . . stating . . . that it desires an amendment to its charter by having granted to it the corporate powers and privileges granted to similar corporations by the Act or certain specified sections of the Act, providing for the grant of corporate powers and privileges to such companies by the Secretary of State. . . ."

[4] Detailed corporate records from the 1970 meeting no longer exist so it is presently unknown whether these plaintiffs voted for the proposals or not.

majority vote is such a fundamental change as requires unanimous consent to make the change, we also are aware that where unanimous consent is required, a single dissenter can thwart the will of all remaining shareholders. To allow that lone dissenter to be a lost, missing, uncaring or negligent shareholder who has not appeared at a duly called meeting, in person or by proxy, is to carry the unanimous consent requirement too far.[5] We therefore hold that the unanimous consent of the shareholders is obtained at a duly called meeting where all shares represented at such meeting vote in favor of the action contained in the notice of meeting and none dissent.

Such a rule is in keeping with the spirit of the Business Corporation Code, OCGA Ch. 14-2, which provides that, absent specific provision to the contrary, the vote of the majority of the shares represented at a meeting at which a majority (quorum) is present is valid shareholder action. OCGA § 14-2-116; Kaplan, Georgia Corp. Law, § 11-9 (1979 ed.) See also Missouri Pacific R. Co. v. State of Kansas, 248 U. S. 276 (39 SC 93, 63 LE 239) (1919). In addition, other courts which have considered this question have held, for example, that where the unanimous vote of a public body is required, it means that all of the members who were present voted and none dissented. Stewart v. City of De Land, 75 S2d 584, 586 (Fla. 1954); Gumm v. City of Lexington, 56 SW2d 703, 705 (Ky. 1933); Coxon v. Inhabitants of City of Trenton, 73 A 253, 254 (N.J. 1909); Atkins v. Philips, 8 S 429, 431 (Fla. 1890). Annot., 43 ALR2d 698, § 8 (b) (1955).

Because all 21,205 shares present at the 1970 meeting voted to approve the majority vote amendment and none dissented, the A & WP may do business in accordance therewith. (To hold otherwise could mean the railroad's charter was not legally renewed in 1970.) Therefore, the trial court was correct in finding that A & WP shareholder action is now governed by majority vote, and the court properly refused to enjoin the stockholders' meeting on this ground.

2. Because we have held that a merger could properly be approved by a majority of the stockholders, we need not reach enumera-

---

[5] In *John P. King Mfg. Co. v. Clay*, 218 Ga. 382, 386-87 (128 SE2d 68) (1962), it was said: "The charter of the defendant corporation is a contract between the State and the corporation and also between the corporation and its stockholders. The plaintiffs, as stockholders, have the right to insist that the corporation act within the terms of its charter and the law and further have the right to obtain the protection of the court against the violation of such contract without showing any injury to them or first applying for redress to the corporation. . . . '[A]ny attempt to use the funds, or pledge the credit of the company not within the legitimate scope of the charter, is a violation of the contract which the stockholders have made with each other, and of the rights — the contract rights — of *any stockholder who chooses to say, "I am not willing."* '" (Emphasis supplied.) We here require only that the unwilling stockholder appear in person or by proxy and cast his or her vote accordingly, so that the corporation and other stockholders are put on notice at the outset that the proposed action cannot be taken.

tion of error 3 contending that the trial court erred in its secondary holding that the minority shareholders are estopped to contest the adoption of the 1970 charter amendments by reason of their accepting $23 per share as the result of the sale of the Joint Terminal which sale was approved at the 1970 meeting.

3. The minority shareholders next argue that even if the majority vote amendment was properly adopted at the 1970 meeting, this particular merger is nevertheless not authorized by law. They rely on OCGA §§ 46-8-80, 46-8-81 (a), which allow railroads incorporated under OCGA Title 46 to merge with other railroads and conclude that therefore a railroad cannot merge with a nonrailroad company such as Blue Berry Corp. A & WP relies upon OCGA § 14-2-215 (a) which generally provides that railroad corporations may merge with corporations chartered under the Business Corporation Code.

At this point, some further analysis of our Corporations, Partnerships, and Associations Code, enacted in 1968, now OCGA Title 14, is required. Chapter 2 thereof, OCGA Ch. 14-2, is the Georgia Business Corporation Code and A & WP relies upon OCGA § 14-2-215, supra. (Chapter 3 relates to nonprofit corporations.) Chapter 4 relates primarily to corporations chartered by the Secretary of State but it contains some provisions relating to corporations, including railroads, created by acts of the General Assembly. E.g., OCGA §§ 14-4-40, 14-4-80, 14-4-81, 14-4-100, 14-4-120. "[T]he new [1968] corporation law leaves where it found them banks, trust companies and all other corporations chartered by the Secretary of State. Such corporations are not subject to either the Business Corporation Code or the Nonprofit Corporation Code, except to the extent that other statutes . . . provide to the contrary. Accordingly, Part III of the new Title 22 [now Chapter 4 of OCGA Title 14] collects and reenacts, without substantial change, those provisions of the [old corporations code] which must be retained so as not to leave the so-called 'Secretary of State' corporations in limbo." Bowman, An Introduction to the New Georgia Corporation Law, 4 Ga.St.B.J. 419 at 453 (1968).

Certain provisions of the 1968 law allow these Secretary of State corporations as well as corporations chartered by the General Assembly, like A & WP, to amend their charters to adopt the general laws. As pointed out in the Bowman article, supra at p. 454, the ultimate goal is to have all corporations subject to the provisions of the general corporations law (the Business Corporation Code).[6] With this goal in

---

[6] A corporation such as A & WP originally chartered by the General Assembly may also amend its charter to adopt the general business corporation provisions of Chapter 14-2. OCGA § 14-2-3 (b) (4) provides that the Business Corporation Code applies "[t]o any corporation . . . created by special Act of the General Assembly without reservation of power to withdraw the franchise . . . which after April 1, 1969, in an amendment to its articles of

mind, we look to the provisions of the Business Corporation Code and those relating to Secretary of State chartered corporations to see whether the A & WP may lawfully merge with the Blue Berry Corporation.

In OCGA § 14-4-100 we find the following: "*Any* insurance, *railroad*, canal, navigation, express, or telegraph *company, incorporated prior to April 1, 1969, by special Act of the General Assembly, may amend its charter so as to acquire any or all of the corporate powers and privileges granted to a like corporation under the Acts passed prior to April 1, 1969*, or thereafter, *providing for the grant of corporate powers and privileges to such companies by the Secretary of State, by filing with the Secretary of State an application* signed with the corporate name stating the name and character of the corporation, the date of the original Act of incorporation and all amendments thereto, and *that it desires an amendment to its charter by having granted to it the corporate powers and privileges granted to similar corporations by the Act or certain specified sections of the Act, providing for the grant of corporate powers and privileges to such corporations by the Secretary of State,* and by paying to the Secretary of State the fee provided by law, to be paid by him into the state treasury. The company shall file along with the application an abstract from the minutes of the corporation, duly certified by the president and secretary of the corporation, which abstract shows that the application for amendment has been authorized by resolution which has been duly adopted by the affirmative vote of the holders of a majority of the shares entitled to vote thereon at a meeting held for the purpose of passing upon the resolution." (Emphasis supplied.) See also OCGA § 46-8-54 (a). Thus, after the 1968 corporations code revision, a railroad corporation chartered by the General Assembly such as A & WP could, with proper approval of the shareholders, petition the Secretary of State to adopt *any or all* of the laws applicable to railroads chartered by the Secretary of State.

At the shareholders' meeting held in 1970, a charter amendment at least adopting the power to make future amendments by majority vote, as contemplated by the last sentence of OCGA § 14-4-100, quoted above, was duly passed by the shareholders.[7] As a result, in 1970 A & WP became subject to the provisions of the Code applicable

---

incorporation or restatement of its articles of incorporation or in a merger or consolidation, elects to be subject to this chapter. Any such corporation shall have all the rights, privileges, franchises, immunities, and powers and shall be subject to all the duties, liabilities, and disabilities of a corporation to which this chapter applies as well as of the statute or special Act by which such corporation was originally created; but in the event of a conflict between such statute or special Act and this chapter, such statute or special Act shall govern."

[7] No challenge other than the unanimous vote requirement discussed in Division 1, supra, was made to action taken at the 1970 shareholders' meeting.

to Secretary of State corporations pursuant to OCGA § 14-4-100, supra, and therefore is to be treated as having received its charter from the Secretary of State.

Chapter 4 contains a provision allowing mergers of certain Secretary of State corporations and business corporations. OCGA § 14-4-141 states: "A corporation which has received its charter from the Secretary of State, other than a bank or trust company, may merge or consolidate with a domestic corporation or corporations governed by Chapter 2 of this title in accordance with Code Section 14-2-215." This latter Code section, OCGA § 14-2-215 (a), part of the Business Corporations Code, provides: "Banking, insurance, *railroad*, trust, canal, navigation, express, and telegraph companies, and other corporations whose charters have been granted by the Secretary of State under provisions other than this chapter, *may merge or consolidate with corporations that are subject to this chapter if not prohibited therefrom* by the laws of this state under which the first mentioned corporations are organized." (Emphasis supplied.)

Neither the general railroad law (OCGA Ch. 46-8) nor the original charter of A & WP from the General Assembly forbids its merger with a business corporation. OCGA §§ 46-8-80 and 46-8-81 (a), supra, which authorize mergers of one railroad with another railroad, do not prohibit mergers of railroads with nonrailroad corporations. Not being prohibited, the power is thus granted by OCGA §§ 14-4-141, 14-2-215 (a). Thus, we find that the proposed merger between A & WP and the Blue Berry Corporation is not unlawful for any of the reasons urged by the minority shareholders.

4. The minority shareholders next urge that the trial court erred in failing to enjoin the merger because it has no valid business purpose and Seaboard seeks only to force a sellout of the minority shareholders. In support of this argument, they offered no facts other than the naked assertion itself. On the other hand, Seaboard offered an affidavit enumerating the business reasons which justified the merger.

The trial court, in its order denying the temporary injunction, held that under the evidence the minority shareholders had no hope of permanently enjoining the merger and denied equitable relief. We find no abuse of discretion. *Mark Smith Constr. Co. v. Fulton County*, 248 Ga. 694, 695 (285 SE2d 692) (1982). Thus, we need not reach the bad faith issue urged by the minority shareholders.[8]

In addition, we note that the trial court allowed the minority shareholders to continue their suit to assert their rights as dissenting shareholders under OCGA §§ 14-2-250, 14-4-143. Thus, the issue of

---

[8] *Comolli v. Comolli*, 241 Ga. 471 (246 SE2d 278) (1978), involved the purchase, authorized by the board of directors, by a closely held corporation of the stock of one stockholder, and is inapplicable here.

the fairness and adequacy of the price offered to the shareholders remains for trial under these provisions, which provide an adequate remedy at law for the minority shareholders.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 6, 1984.

*Burnside & Wall, Thomas R. Burnside, Jr., James B. Wall,* for appellants.

*Heyman & Sizemore, William H. Major, Terry P. McKenna, Joseph M. Feuer,* for appellees.